## Case No. 17,812.
### WILSON et al. v. The JEWESS.

[N. Y. Times, Nov. 29, 1854.]

District Court, D. Connecticut. Nov., 1854.

MARITIME LIENS—MATERIALS AND REPAIRS—SALE PENDING REPAIRS—LOCAL STATUTES—PRIORITY OVER MORTGAGE—NOTICE OF MORTGAGE—RECORD IN COLLECTOR'S OFFICE.

[1. Where material and repairs were being put upon a foreign vessel in the port of New York, and, before completion thereof, she was sold to her master, who lived in New York, the material and repair men have a lien, first under the general admiralty law, and afterwards under the local statutes.]

[2. A lien for materials and repairs will have priority over a mortgage owned by one who was presented to the material and repair men as a part owner of the ship, and, who, by his bearing, himself confirmed the impression that he was one of the owners.]

[3. The record of a mortgage in the office of the collector is not constructive notice to material and repair men.]

[This was a libel in rem by James S. Wilson and others against the steamer Jewess, for materials and repairs.]

INGERSOLL, District Judge. The libel is for materials furnished, and repairs put on the steamer by the libellants. Previous to her arrival here, she was owned in Baltimore, and is admitted to have been then a foreign vessel, and, as such, liable in rem for the repairs. After she came to New York, the libellants proceeded to put these repairs on her, and, while they were so in process, she was sold by the owners to her captain. It is claimed that he belonged to New York, and therefore that the steamer then became a domestic vessel. The captain at the time mortgaged her to the original owners, to secure the purchase money, and also to the claimant, Trowbridge, to secure advances made by him.

Two questions arise in this case: First. Have the libellants a lien on the vessel? Secondly. Was their lien prior to the mortgagees'?

To this first question the reply is that, when the libellants commenced furnishing the vessel with supplies, she was foreign, and needed them; therefore a lien would arise in favor of those who furnished them with supplies, which lien would last as long as the foreign character of the vessel continued, and after the purchase of the vessel by Wright; and whether he has continued a resident of the city or not would make but little difference, as the local law or lien existed against the ship, she not having departed from the state. I therefore find in favor of the libellants on that question, and hold that they have a lien on her.

As to the next question, it becomes a matter of more difficulty to decide whether the Baltimore owners and Trowbridge should be treated as mortgagees, or that the libellants should have a priority of lien. On that point we have two decisions of district judges which are adverse to each other. Judge Hall gave his opinion that "material men" have a priority over mortgagees, and Judge Betts held that mortgagees have a priority over "material men." I can, however, give my judgment without clashing with either of the learned judges referred to. Although Judge Betts lays it down as a principle of law that mortgagees have a preference over material men, yet he admits that circumstances will arise wherein such priority will not exist; as, for instance, where mortgagees are in part owners, or held out to be such.

The question then recurs, are there any such circumstances in this case to bring the mortgagees within the distinction laid down by Judge Betts. I find that there are. It appears that Mr. Trowbridge was introduced to several of these material men as an owner, and his deportment and acts were such as to induce them to believe that he was one of the owners of the vessel to which the supplies were furnished. The act of the Baltimore owners of the vessel in sending her to this port for supplies, in charge of the registered master, and he being regarded as the master of a foreign vessel, also operated to mislead the material men into the idea that they were dealing with the owners, and not with the mortgagees. If such are the facts, the libellants had no notice that the claimants were mortgagees, unless the record in the office of the collector amounted to that notice. Does that record amount to a notice? I think not, because from an examination of the act of congress, which provides that conveyances and mortgages should be recorded, it appears that the record is only a notice to persons holding title to or interest in vessels, by express conveyance or instruments under law. I therefore find the record question in favor of the libellants. I shall therefore decree in favor of the libellants, with costs, and order a reference to ascertain the amount due.